UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-561-FDW

| | |
|---|---|
| EDWARD EARL BROWN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| A. PHILLIPS, ET AL., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 2), and on his motion for the appointment of counsel, (Doc. No. 20). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 22).

## I.  BACKGROUND

*Pro se* Plaintiff Edward Brown, Jr., who is presently incarcerated at the Alexander Correctional Institution in Taylorsville, North Carolina, filed a civil rights suit pursuant to 42 U.S.C. § 1983 on May 24, 2016.[1] He named as Defendants the following Lanesboro Correctional Institution employees: Correctional Officers A. Phillips and Baker, Assistant Unit Manager Rorie, Captain Martin, and Sergeant Lamburt.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff was preparing to shower on July 5, 2013 at around 9:00 or 10:00 PM when Officer Phillips tried to provoke an argument about a conversation that happened the week before. Plaintiff told Phillips that it was in the past and he let it go. Phillips said "I got you" and walked away. (Doc. No. 2 at

---

[1] This cause was initially filed in the Middle District of North Carolina which transferred the action to this Court on July 21, 2016. (Doc. Nos. 2, 12).

1

4). Phillips returned and cuffed Plaintiff's hands in front of his body. When Plaintiff stepped back to get his change of clothes and towel, Phillips stepped into the cell and stated "[d]o something," and Plaintiff said he just wanted to have his shower. (Doc. No. 2 at 4). Phillips stepped back, grinning, and Plaintiff thought the issue was over.

Phillips and Baker were present when Plaintiff stepped into the shower cage. Phillips took off Plaintiff's left handcuff, turned to Baker and the inmates near the shower and stated "You all don't tell on me," then unlocked the shower door and assumed a "fighting stance." (Doc. No. 2 at 5). Plaintiff backed into the corner of the shower area and asked the officers what was going on. Phillips then charged Plaintiff, punching him on the head and face. Phillips grabbed Plaintiff, who slipped and fell on the wet surface, onto his left elbow and hands. He tried to "ball up" to protect himself from the attack. (Doc. No. 2 at 5). Baker ran into the shower, put his arm around Plaintiff's neck, and started to choke him while Phillips kicked Plaintiff with his hard-toe boots in the spine, ribs, and shoulder. Plaintiff told them they "got him" and asked them to let him go. (Doc. No. 2 at 5). Baker let Plaintiff go and jumped out of the shower door and watched as Phillips continued the assault. The next time Plaintiff looked up, there were two more officers watching outside the shower door. Phillips stopped and jumped out of the shower as Plaintiff rolled around in pain. The officers went to tell Sergeant Smith what happened. Smith had Plaintiff brought to the cell for a picture.

Everything on Plaintiff's body hurt. He woke up in pain the next morning and could not move to get his food tray. Sergeant Lamburt and other officers helped carry him downstairs to see a nurse. Plaintiff told Nurse Hopskins that he needed to go to the hospital because his hands and back were swollen and painful. She "gave [him] an attitude" and told the officers to put him in a rec cage "[t]o wait for the okay" to send him to the hospital. (Doc. No. 2 at 6). Plaintiff was placed

2

in a wheelchair for three hours, in pain, and later "they" refused to send him to the hospital. (Doc. No. 2 at 6). Rorie and Martin ordered Sergeant Lamburt to make Plaintiff walk upstairs to his cell, which he was unable to do, so he fell on the staircase. No codes were called. Rorie and Martin ordered Sergeant Lamburt to take Plaintiff to his cell "with force" in full restraints for three days. (Doc. No. 2 at 6).

"Medical officials" did not send him to a hospital for treatment and he was left in a cell with a broken hand for three weeks. (Doc. No. 2 at 7).

Plaintiff's injuries include a broken hand and abnormal growths in both hands requiring surgery. Plaintiff has received one surgery and is awaiting the second. He has back pain from permanent damage to his back. He has flashbacks from being attacked and being placed on the three-day cell restriction in full restrains with a broken hand.

Plaintiff seeks compensatory and punitive damages.

**II. MOTION FOR THE APPOINTMENT OF COUNSEL**

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where "a pro se litigant has a colorable claim but lacks the capacity to present it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984) (citation omitted), *abrogated on other grounds by* Mallard v. U.S. Dist. Ct., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Plaintiff has filed a motion for the appointment of counsel in which he claims that he cannot afford counsel and has made repeated efforts to obtain a lawyer. (Doc. No. 20). He explains that

3

he needs counsel because his imprisonment will greatly limit his ability to litigate; the issues are complex and will require significant research and investigation; Plaintiff has limited access to the law; a trial will likely involve conflicting testimony and counsel would better enable Plaintiff to present evidence and cross-examine witnesses; and Plaintiff had surgery on his writing hand due to injuries caused by officers which limits the use of his writing hand.

Plaintiff has failed to demonstrate the existence of exceptional circumstances that justify appointment of counsel. The motion identifies difficulties that are common to most incarcerated *pro se* litigants. The Plaintiff's hand injury likewise fails to demonstrate the existence of an extraordinary circumstance, which is demonstrated by his ability to engage in the instant litigation. See generally Hall v. Holsmith, 340 Fed. Appx. 944 (4th Cir. 2009) (no extraordinary circumstances were present where the claims were not complicated and the plaintiff had demonstrated the capacity to present them adequately in numerous court filings).[2] Therefore, Plaintiff's Motion to Appoint Counsel will be denied.

### III. STANDARD OF REVIEW

A "court shall dismiss [a prisoner's] case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d

---

[2] Unpublished opinions are not ordinarily accorded precedential value, and are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

4

726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**IV.     DISCUSSION**

**(1)     Unnamed Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption

5

and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint mentions individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders any allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Plaintiff is granted leave to file an Amended Complaint within 14 days of this Order by properly naming any individuals against whom he intends to proceed in the caption in compliance with Rule 10(a).[3]

**(2)** **Excessive Force**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 1 (1992). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and

---

[3] The Court expresses no opinion about the timeliness, procedural viability, or merit of any such Amended Complaint.

unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act ... coupled with a duty to act." Randall v. Prince George's County, 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's County, 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009).

Plaintiff alleges that Phillips and Baker physically attacked him in the shower. The following day, Rorie and Martin ordered Lamburt to take Plaintiff to his cell for three days in full restraints after he had fallen on the stairs and was injured from the beating. Striking a non-resisting inmate, and placing him in full restraints for three days while injured are sufficient to state an Eighth Amendment claim against all the Defendants.

Therefore, excessive force claim shall proceed against Defendants **Phillips, Baker, Rorie, Martin,** and **Lamburt**.

**(3)** <u>**Deliberate Indifference to a Serious Medical Need**</u>

As the Supreme Court has explained, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted); <u>see</u> <u>Hill v. Crum</u>, 727 F.3d 312, 317 (4th Cir. 2013) ("the Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," and "forbids the unnecessary and wanton infliction of pain.") (internal quotation marks omitted).

The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. <u>See</u> <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008); <u>see</u> <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999) ("to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Iko</u>, 535 F.3d at 241 (internal quotation marks omitted). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998). A mere delay or interference with treatment can

8

be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). However, allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."); see Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976) ("even if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention.").

Plaintiff alleges that he was deprived of adequate medical care after the beating. He alleges that Lamburt took him to see a nurse the day following the beating when Plaintiff was unable to get his food tray, but the nurse did not provide care. He was sent back to his cell and fell on stairs, then Rorie and Martin ordered Lamburt to place him in his cell for three days in full restraints with a broken hand.

By taking for Plaintiff to see a nurse when he appeared to need assistance, Lamburt attempted to provide aid and was not deliberately indifferent. Plaintiff has failed to sufficiently allege that Rorie, Martin, and Lamburt were deliberately indifferent after Plaintiff saw a nurse. He fails to allege that Defendants knew that the care he received was deficient, or that Plaintiff's hand was broken or otherwise had an objectively serious medical need and purposefully delayed needed treatment.

Plaintiff alleges that Nurse Hopskins failed to provide care, however, she is not named as a Defendant. Plaintiff's general claims that unnamed officials failed to provide him with care are too vague and conclusory to proceed. See (Doc. No. 2 at 6) ("they" refused to send Plaintiff for

9

medical care); (Doc. No. 2 at 7) ("medical officials" left him in a cell with a broken hand for three weeks).

Therefore, Plaintiff's claim of deliberate indifference to a serious medical need is dismissed at this time.

## V. CONCLUSION

For the reasons stated herein, the Court finds that the case should proceed against Defendants Phillips, Baker, Rorie, Martin, and Lamburt for the use of excessive force. The remaining claims are dismissed as facially insufficient. Plaintiff may file an Amended Complaint within 14 days of the issuance of this Order to correct the deficiencies, if possible.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's Motion for the appointment of counsel, (Doc. No. 20), is **DENIED**.

2. Plaintiff's claims of excessive force against Defendants Phillips, Baker, Rorie, Martin and Lamburt, survive initial review under 28 U.S.C. § 1915(e).

3. The remaining claims are dismissed for failure to state a claim.

4. Plaintiff is granted leave to file an Amended Complaint within 14 days of the date of this Order.

5. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Phillips, Baker, Rorie, Martin** and **Lamburt**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: November 16, 2017

_Frank D. Whitney_
Frank D. Whitney
Chief United States District Judge

11